**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Crim. No. 10-310-04-RCL** |
| **ERIC SCURRY** | : | |

**MOTION TO SUPPRESS RESULTS OF ELECTRONIC SURVEILLANCE**

Defendant Eric Scurry, by and though counsel, moves this Honorable Court to suppress all evidence obtained as a result the unlawful surveillance of his phone. In support, he states the following.

**FACTS**

1. The defendant has been indicted along with co-defendants Robert Savoy, Terrence Hudson, Jerome Johnson, Keena Scurry, and Nathan Robinson with Conspiracy to Distribute and Possess With Intent to Distribute 500 Grams or More of Cocaine and 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 446. Co-defendants Savoy, Hudson, and Robinson have also been charged with substantive offenses involving firearm and controlled substance offenses. Finally the indictment contains a Forfeiture Allegation against all defendants.

2. On April 2, 2010, the Honorable Henry H. Kennedy issued an order authorizing the interception of wire communications to and from cellular telephone number 202-230-7790, a cellphone said to be used by Mr. Scurry. On April 30, 2010, Judge Kennedy issued an extension for that number. As a result, a total of 9012 completed calls were intercepted.

3. The Affidavit set forth the probable cause to believe that federal drug

offenses were occurring and that Eric Scurry and others were involved. It also set forth the objectives of the wiretap and the reasons why other investigative techniques would not achieve the same results. Finally, the Affidavit discussed the "minimization" of "non-pertinent" calls.

4. Judge Kennedy authorized the initial interception as well as the extension finding, "It has been established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ" Order p. 2. The Order further required, "that all monitoring of wire communications shall be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation." *Id.* at 6.

## ARGUMENT

### I. STANDING

The Federal Wiretap Statute, enacted in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, is codified at 18 U.S.C. §§ 2520 through 2520. Section 2518 (10)(a), which authorizes "aggrieved persons" to move to suppress both the contents of the intercepted communications and the evidence derived therefrom, provides in pertinent part:

> Any aggrieved person in a trial, hearing, or proceeding before any court, department, officer, agency, regulatory body, or other subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted

> is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

An "aggrieved person" includes a party or participant to the intercepted wire communications, as well as the person on whose premises the intercepted conversation occurred. *See, Alderman v. United States*, 394 U.S. 165, 174 (1969). Scurry was a party to intercepted conversations with the other defendants. Thus, Defendant Scurry is an aggrieved party pursuant to 18 U.S.C. 2518 (10)(a), as to any other interceptions beyond those originated on his cellphone and as standing to challenge the evidence from the wiretap.

**II. PROBABLE CAUSE, "NECESSITY" AND CONTINUING THE WIRETAPS**

A. General Considerations

The Fourth Amendment to the Constitution provides that "the right of people to be secure ...against unreasonable searches and seizures ...shall not be violated." The Supreme Court, in *Berger v. New York*, 388 U.S. 42 (1967), struck down a New York statute which provided for the issuance of a warrant for eavesdropping merely upon oath that there was reasonable grounds to believe that evidence of a crime may be obtained. In finding the statute violated the Fourth and Fourteenth Amendments to the United States Constitution, the Court observed that, "(t)he broad sweep of the statute is immediately observable and such a requirement raises a serious probable cause question under the Fourth Amendment." Id. at 54-55. The Court concluded that the New York statute constituted little more than a general warrant to seize any and all conversations

of the named persons whose communications were to be intercepted and established. See, Id. Thus, because of these Fourth Amendment considerations, the probable cause bar for wiretap seizures of telephone conversations is a high one.

It is noteworthy that the Supreme Court has observed that in enacting Title III, Congress did not expect that electronic surveillance would be routinely used when traditional investigative techniques were sufficient to expose illegal activity. *See, United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). Perhaps it is archaic, but the use of electronic surveillance, it was once held, is allowed only in extraordinary circumstances. *See, Dalia v. United States*, 491 U.S. 238 (1979); *see also, United States v. Clerkley*, 556 F.2d 709 (4th Cir. 1973).

18 U.S.C. Section 2516 (b) defines the probable cause standard as requiring a full and complete statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued including details as to the particular offense that has been, is being, or is about to be committed. 18 U.S.C. Section 2518(1)(c) goes further and requires that, in addition to the statement as to probable cause, each application for the wiretap must contain a full and complete statement as to whether or not other investigative procedures have been tried and failed, why they reasonably appear to be unlikely to succeed if tried, or why they are too dangerous. This is referred to as the “necessity” requirement. The failure of the government’s affidavit and application for an order to fully establish the requirements set forth in 18 U.S.C. Section 2518(1)(c) and 3(c) may, thus, also be a failure to establish probable

cause for the wiretap. The requirement applies with equal force to extensions of wiretaps as to their initial authorization.

But a mere boilerplate reiteration of difficulty of gathering usable evidence is not sufficient for authorizing electronic surveillance. *See, United States v. McKinney,* 785 F.Supp. 1214 (D.Md, 1992). Moreover, the application must affirmatively demonstrate normal investigative measures will not succeed or have not succeeded in the particular case at hand. *United States v. Robinson*, 698 F.2d 448 (D.C. Cir. 1983) (per curium). *Accord, United States v. Blackmon*, 273 F.3d 1204 (9th. Cir. 2001). *See also, United States v. Simpson*, 813 F.2d 1462 (9th. Cir. 1987); *cert. denied*, 484 U.S. 898 (1987) (facts withheld from authorizing judge revealed that traditional techniques could have led to successful infiltration of organization.)

In this case, the government fails to satisfy the necessity requirement. According to the affidavit, law enforcement used physical surveillance and cooperating witnesses. While every effort may not have been successful, this is not sufficient to establish that continued efforts would not prove beneficial. The agent goes on to state that a search warrant would not be effective because it is not known where and when drugs were being stored at Scurry's residence. Yet, on December 7, 2009, during a controlled buy, Scurry is said to go back to his residence to obtain drugs. The law does not require that the agents know exactly when and where in a residence drugs will be found before a search warrant issues. Moreover, the agents had the option of utilizing GPS devices on Scurry's vehicles. While they attempted to do so, they failed to obtain a warrant rendering

the seizure of any information obtained illegal.

Scurry submits that the necessity requirement is not met merely because the investigation is not perfect or because the agents fail to take a course of action available to them for insufficient reasons. The agents could have obtained a search warrant, but did not. The agents could have sought an order allowing the use of GPS devices, but did not. Because the agents failed to take advantage of other far less intrusive methods of investigation but chose not to, the evidence obtained as a result of the interceptions must be suppressed.

**III. MINIMIZATION**

In addition to the probable cause requirements, 18 U.S.C. § 2518(5) requires that even if a wiretap order is secured, such order shall contain a provision that the authorization to intercept shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. The United States and the Court clearly recognized this legal obligation because the affidavits, applications and authorizations all specifically addressed the minimization requirement, as do the detailed operating procedures issued by the Office of the United States Attorney to the agents for conducting the wiretap. The question therefore is whether the agents complied.

Whether the government has complied with the minimization requirement is judged on a case-by-case basis, and the test for whether the government agents conducted the wiretap in accordance with the minimization requirement is one of "reasonableness," *Scott v. United States*, 936 U.S. 128, 139 (I978);

*accord, United States v. Oriakhi*, 57 F.3d 1290, 1300 (4th Cir. 1995). The burden of proving that the executing agents complied with the statutory minimization requirement falls upon the government. *See, United States v. Rizzo*, 491 F.2d 215 (2d Cir. 1974); cert. denied, 416 U.S. 990 (1974), accord*, United States v. Torres,* 908 F.2d 1417, 1423 (9th Cir. 1990). However, courts have, in practice, required a defendant to demonstrate some prima facie showing that the government did not comply with the requirement, *United States v. Thornton*, 454 F.2d 957 (D. C. Cir. 1971).

Scurry meets this prima facie burden. As the attached table shows, out of 9012 completed calls, 1177 were pertinent. Of the remaining 6523 calls, it is assumed all were non-pertinent. Of the non-pertinent calls, 504 lasted between one and two minutes and 360 lasted longer than two minutes. The failure to minimize requires suppression of the evidence obtained from the wiretap.

WHEREFORE, Defendant Scurry moves this Court to grant this request.

Respectfully submitted,

/s/______________________________
Christopher M. Davis #385582
Counsel for Eric Scurry

Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Request was served upon the assigned AUSA(s) via the Court's ECF System on this 14th day of October 2011.

/s/________________________________
Christopher M.