**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal No.: 10 – 310 (RCL)** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **TERRENCE HUDSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE AND TANGIBLE EVIDENCE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF[1]**

COMES NOW, Defendant Terrence Hudson, by and through undersigned counsel, Rudolph Acree, Jr., Esq., pursuant to rule 12(b)(3) of the Federal Rules of Criminal Procedure, 18 U.S.C. 2518, and the Fourth Amendment to the United States Constitution, respectfully moves this Court to suppress the use of all electronic surveillance evidence, and all other evidence derived therefrom. As grounds for this motion, the Defendant states as follows:

## BACKGROUND

Mr. Hudson is charged in a four count superseding indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 280

[1] Global Positioning Systems (GPS) were used during the investigation of the defendants in this case. Specifically, a GPS device was placed on Mr. Scurry's vehicle. Counsel understands that Mr. Hudson has no standing with respect to the GPS device placed on Mr. Scurry's vehicle, however, should Mr. Scurry be successful in his challenge of the use of the GPS on his vehicle then it is Mr. Hudson's position that his intercepted wire communications should be suppressed because information gained from Mr. Scurry's GPS was used in the application to secure the Title III wiretap for Mr. Hudson's cellular phones.

grams or more of cocaine base in violation of 21 U.S.C. § 846; using, carrying, and possession a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c); and aiding and abetting in violation of 18 U.S.C. § 2.

These charges against Mr. Hudson, in large part, stem from information gathered during electronic surveillance of wire communications to and from telephone numbers 301-367-6175 and 571-501-3531. The government filed an application for an order authorizing the interception of wire communications to and from mobile cellular telephone number 301-367—6175 and 571-501-3531. On June 11, 2010, the Court issued an order authorizing the interceptions of wire communications to and from the aforementioned numbers that ran from June 14, 2010 thru July 13, 2010. Based on this wiretap, hundreds of communications were intercepted from the aforementioned telephone numbers. The government indicates that it intends to introduce the seized evidence during the trial of the defendant in this case. The Defendant respectfully submits that the evidence was unlawfully seized, and is therefore inadmissible. Thus, the Defendant is seeking an order from this Court suppressing the evidence as "fruits of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471 (1963).

## LEGAL ARGUMENT

### I. Standing:

18 U.S.C. § 2518(10)(a) provides that "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court… may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that – (i) the communication was unlawfully intercepted…" Section 2510(11) defines an "aggrieved person" as a "person who was a party to any

intercepted wire, oral, or electronic communication…" Thus, Mr. Hudson is an "aggrieved person" who has standing to challenge the use of the evidence derived as a result of the electronic surveillance since Mr. Hudson's cell phones were targeted numbers based on the application for the wiretap.

## II. "Necessity" Requirements of 18 U.S.C. § 2518 Were Not Met:

The Defendant, Terrence Hudson, contends that wire communications were unlawfully intercepted because the court order authorizing the wiretap was obtained in contravention of the requirements of 18 U.S.C. § 2518(1)(c), and 2518(3)(c). 19 U.S.C. § 2510, et seq. established rules and procedures that carefully balance the privacy rights of individuals against the government's need to investigate certain criminal activities. The government's gathering of electronic surveillance evidence in this case violated those rules.

18 U.S.C. § 2518(3)(c) requires that before a judge can approve a wiretap application it must determine, *interalia*, that "normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or be too dangerous." This provision is commonly referred to as the "necessity requirement." The purpose of the "necessity requirement" is to ensure 'that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Cooper*, 85 F. Supp 2d 1, 33 (D.D.C 2000), (quoting *United States v. Johnson*, 696 F.2d 115, 123 (D.C. Cir 1982) (citation omitted). The Defendant, Terrence Hudson, contends that the government did not satisfy the "necessity requirement" in this case.

In examining the alternative investigative techniques utilized by the agents thus far, the defense disagrees with the representation that the techniques utilized thus far have proved ineffective, at that time, in achieving the goals of the investigation.

The special agent suggested that the wire communications intercepted, over a period of 60 days, from the mobile cellular telephone number 202-230-7790 which belonged to Eric Scurry could not sufficiently give the complete picture of Mr. Hudson's role in the conspiracy. Despite this alleged ineffectiveness of the wiretap, the agent was able to learn that Mr. Hudson was in fact a drug dealer, that there were transactions between both Scurry and Hudson, that Hudson was the supplier for Scurry, and that Hudson and Scurry shared a common supplier. The agents were getting information from the wiretap on Eric Scurry's phone which related to Mr. Hudson. The information may not have been progressing as quickly as they may have liked or hoped, but it was nevertheless giving the agents critical information that was moving their investigation forward as it related to Mr. Hudson.

According to the agent, physical surveillance has been invaluable to the investigation. The physical surveillance along with the information derived from the intercepted calls from Scurry's phone has been able to assist the government in identifying co-conspirators as well as observing the activities of Mr. Hudson – things that the agent suggested could be done in their discussion regarding the use of the intercepted calls from Scurry's phone. But despite this invaluable success, the government noted that it needed electronic surveillance to accomplish their goals. Continued surveillance of the targets, including the use of pole cameras and roving surveillance, and the surveillance of homes and workplaces, would have provided the government with much more

information about the movements of the targets and their associations, without the need to resort to electronic surveillance.

The agent suggested that the use of undercover police personnel was an ineffective option for infiltrating the type of organization that Mr. Hudson was a part of and summarily ruled it out as an option. The agent also suggested that the two confidential informants that had been involved in this investigation were not in a position to purchase narcotics from Hudson because they either dealt with Scurry exclusively or did not have a relationship with Hudson such that they could purchase narcotics from him. But, the government made no attempt to use the confidential informants relationship with Scurry to gain access to Mr. Hudson.

For the agent to argue that pen registers and the analysis of them were of limited use is seen as a baseless and boilerplate statement. The affidavit noted that the analysis was able to establish relationships and patterns of operations. The complaint was not that the method was not providing information but that it was not producing "real time information." However, the method should have been exhausted, as required by the necessity showing for a wiretap, to verify that all members of the alleged conspiracy could not be identified. The leads from the pen registers had not been exhausted. Thus, the government out of expediency rather than necessity sought to obtain the wiretap.

The use of wiretaps seems to have greatly increased in recent years. It appears that law enforcement agencies have discovered that it can be a very effective tool, and the agencies more regularly seek and obtain both the manpower and funding to run wiretap operations. Wiretaps seem to have become more of a normal investigative techniques,

rather than an investigative tool to be used when other investigative methods fail. As a result, the "necessity requirement" is becoming diluted.

The purpose of the wiretap statute can only be achieved by "giv[ing] close scrutiny to applications challenged for noncompliance and …reject[ing] generalized and conclusory statements that other investigative procedures would prove unsuccessful." *Cooper*, 85 F. Supp 2d at 33, quoting Johnson, 696 F.2d at 123. The Defendant recognizes that wiretaps do not have to be an absolute last resort. See, *Cooper*, supra at 33, citing *United States v. Williams*, 580 F.2d 578, 588 (D.C. Cir. 1978). Nevertheless, in this case, a review of the affidavit in support of the wiretap shows that the government did not need the wiretap to make its case against the defendants in the indictment. Normal investigative techniques were working, and would have led to the indictment of the same people if pursued to its conclusion without the wire. The use of the wiretap facilitated and expedited the investigation, but was not necessary as required by 18 U.S.C. 2518. The government's statements as to necessity were generalized and conclusory. Thus the "necessity requirement" was not satisfied, and the application was therefore not compliant with the statutory requirements. Accordingly, Mr. Hudson submits that his statutory and 4th Amendment rights were violated and that the wiretap evidence should be suppressed.

**III. Statements Necessary to Obtain Probable Cause:**

Unlike standard search warrant cases dealing with challenges to an affidavit and then comparing whether the statements are necessary for probable cause in a Franks type hearing, the type of affidavit challenged in this case does not have the normal type of probable cause requirements because it is entirely statutory under Title 18 and the statute

must be followed. Because of the heightened interests guarded by the Court in electronic surveillance, the statute requires that the affidavit specifically list all other methods and alternatives used in writing and listed a host of other statutory requirements for probable cause. The court is looking for reasonable trustworthy information sufficient to warrant reasonable caution to believe that an offense has been or is being committed and all other techniques have been reasonably used. Where the statement of the type given here is to avoid an investigatory technique the statute is clearly being subverted.

**IV. Other Matters:**

The suppression of wire communications intercepted pursuant to 18 U.S.C. 2518 is warranted under 2518(10)(a)(ii) if the order authorizing the application is "insufficient on its face." The order authorizing the application for the interception of wire communications for Mr. Hudson's two cellular phones is "insufficient on its face" because the order did not specify the identity of the person authorizing the application as required by 18 U.S.C. 2518(4)(d). The document in counsel's possession does not bear the identity of the person authorizing the application but has numerous (x)'s in the place where the name of the authorizing individual should be found. Given this fact, the order is facially insufficient pursuant to 18 U.S.C. 2518 and as a result the intercepted wire communications must be suppressed.

**V. Conclusion:**

The Defendant, Mr. Hudson, submits that the government's affidavit offered in support of surveillance of wire communications and purporting to show that "normal investigative procedures have been tried and failed" was inadequate and did not meet the requirements of the statute. The explanations of why normal investigative procedures and

alternatives were not available were conclusory; and, to the contrary, showed that normal investigatory methods were continually and successfully being implemented with significant results. Accordingly, the government's applications did not contain sufficient facts to satisfy 18 U.S.C. § 2518(1)(c) and support the issuing court's § 2518(3)(c) findings.

Based on the foregoing, the Defendant respectfully requests that Honorable Court to enter an Order suppressing from use at trial all evidence that was obtained directly or indirectly as a result of the unlawful interceptions.

Dated: October 14, 2011

Respectfully Submitted,

/s/

Rudolph Acree, Jr., Esq.
1211 Connecticut Ave., N.W.,
Suite 506
Washington D.C. 20036
202-331-1961
Counsel for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion has been served electronically upon AUSAs Arvind Lal and Opher Shweiki, Office of the United States Attorney, 555 Fourth Street, N.W., Washington D.C. 20530, and all defense counsel of record on this 14th day of October, 2011.

/s/

Rudolph Acree, Jr., Esq.,